MARY GOUDREAU, ADMINISTRATRIX, *vs.* THE CONNECTICUT COMPANY.

Second Judicial District, Norwich, April Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

The motorman of a trolley-car is not bound to anticipate the presence of trespassers on a bridge built for, and used exclusively by, railroad and electric cars, and which pedestrians are warned against crossing by a notice posted at each end of the structure. Under such circumstances it is enough if the motorman, upon seeing a person walking on the bridge, exercises reasonable care to stop his car and avoid a collision.

The plaintiff's intestate while crossing such a bridge as a trespasser, was struck and killed by a trolley-car going in the opposite direction. *Held,* upon a review of the evidence, that the plaintiff had failed to make out a prima facie case and was properly nonsuited.

Argued April 25th—decided June 15th, 1911.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate and alleged to have been caused by the defendant's negligence, brought to the Superior Court in New London County where the plaintiff was nonsuited in a trial to the jury

before *Reed, J.*, and from the refusal to set aside this judgment the plaintiff appealed. *No error.*

*Donald G. Perkins* and *Edmund W. Perkins*, for the appellant (plaintiff).

*Michael Kenealy*, for the appellee (defendant).

HALL, C. J. The plaintiff's intestate, Alphonse Goudreau, while crossing, in an easterly direction, on foot, a railroad bridge over the Shetucket River in the village of Taftville, at about 7 o'clock in the morning of June 29th, 1909, was struck by the defendant's westbound trolley-car and thrown from the bridge and killed.

The complaint in this action, which was brought to recover damages for such injury, alleges that for many years the bridge in question had been used by persons on foot as a means of crossing said river; that many persons daily crossed the same, as the defendant well knew; that such use of the bridge by persons on foot was acquiesced in by the defendant; that the defendant's servant operating the trolley-car on the occasion in question saw Goudreau in his dangerous situation upon the bridge in sufficient time to have stopped the car or checked its speed, but that he negligently, recklessly and wantonly drove the car over the bridge at great speed, and violently struck the plaintiff and threw him from the bridge into the water, and negligently failed to stop the car and aid Goudreau, when he could easily have done so and could thereby have saved his life.

The evidence before us, including photographs of the *locus*, shows these facts:—

The bridge in question, extending easterly and westerly, is two hundred and eighty-four feet long, and was built for the exclusive use of steam and trolley railroad cars. There is no planking upon it, and no place where a person on foot can stand with safety while a steam

or trolley-car is passing, excepting that there are two platforms at the sides of the two piers, each about five feet square, and opening onto the bridge on the north side of it, one of said platforms being about one hundred feet east from the west end of the bridge, and the other about one hundred feet farther east. The distance from the top of the bridge to the water below is about twenty-five feet. The water below was about two feet deep. At each end of the bridge is a sign warning persons of the danger of walking on the bridge.

There was no evidence that the defendant had permitted persons to cross the bridge on foot, or that persons had ever so crossed it before the accident.

The railroad track as it leaves the east end of the bridge is upon an embankment, and curves to the right, or southerly, for a distance of about a third of a mile. To a motorman upon a trolley-car coming from the east the view of the bridge is unobstructed for a distance of about nine hundred feet from the east end of the bridge.

Upon the morning of the accident Goudreau, who was fifty-two years of age, in good health and in the full possession of his faculties, attempted to cross the bridge in question from west to east walking on the ties. Passengers upon the trolley-car saw him walking on the bridge toward the east between the rails and toward the platforms at the piers when the car was about two hundred feet east of the bridge. After he had gone a few feet east of the west platform, he raised his hand as if to signal the car, which he could have seen approaching from the east, to stop, and ran toward the approaching car, and, as the car came near, turned off the rails to the right or south, and was struck and killed at a point a few feet west of the east pier and platform.

The trolley-car was approaching the bridge at a speed of about twenty-five miles an hour. A motorman and a pilot were on the front platform looking ahead. Had

they looked across the curve toward the bridge as the car approached it, they could have seen it and the man upon it. At about the time Goudreau raised his hand and started to run, and when the car was near the east end of the bridge, the motorman put on the emergency brake. The car was stopped at a point one or two car lengths west of the point where Goudreau was struck, and near the point at which passengers on the car first saw him on the bridge. When the car was stopped, the motorman and pilot and some of the passengers immediately left the car, and procured a boat. When the body was reached, Goudreau was apparently dead.

At the close of the plaintiff's evidence the court granted the defendant's motion for a nonsuit, and denied the plaintiff's motion to set the nonsuit aside.

There was no error in the action of the trial court. Drawing from the evidence every reasonable inference favorable to the plaintiff, the evidence before us falls far short of establishing prima facie the case stated in the complaint. It fails to show that Goudreau had any license or permission whatever to cross the bridge on foot, or that he was other than a trespasser in doing so. It fails to show that people were in the habit of crossing this bridge on foot, or, indeed, that any one ever attempted to do so before. The danger to a foot passenger in attempting to cross it was perfectly manifest, and, further, Goudreau was expressly warned of that danger by the sign at the end of the bridge. It is very clear from the evidence that he had no right to cross the bridge, and that in attempting to do so he was, under the circumstances, acting rashly.

There is no evidence whatever in support of the averment of the complaint that the motorman failed to stop the car or check its speed when he saw the dangerous situation of Goudreau, or should have seen it, and could have stopped the car or checked its speed. The

evidence is that the motorman put on the emergency brake at the time Goudreau raised his hand and started to run. There is no evidence that the motorman or the pilot actually saw Goudreau on the bridge before that time.

But it is urged that the motorman was negligent in not having seen the deceased in his dangerous position soon enough to have enabled him to stop the car, since his view of the bridge was unobstructed for a distance of some nine hundred feet east of the bridge.

First, it is evident that if the motorman at that distance from the bridge was looking ahead on the line of the track, as he would be expected to be looking, the bridge, on account of the long curve in the track, would not have been in the range of his vision.

Again, there is nothing in the evidence to indicate that he ought to have looked to see if any one was crossing a bridge which he knew was solely for the use of the railroad, which he knew people were warned not to cross on foot, and which he did not know, so far as the evidence discloses, that any foot-passenger ever attempted to cross.

Again, if the motorman had seen Goudreau sooner than he did, it cannot reasonably be said that he was negligent in not anticipating that Goudreau would run directly toward the car, instead of away from it, or instead of seeking safety on the platform which was near him when he first saw the car.

The evidence furnishes no support whatever for the averment that the motorman and the pilot neglected to save the life of Goudreau, when they could have done so, after he was struck and thrown into the water. They apparently did all that they were required to do.

There is no error.

In this opinion the other judges concurred.